UNITED STATES of America, Appellee,

v.

Alfonzo CAIN, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Rommie LOUDD, Defendant, Appellant.

Nos. 76–1123, 76–1124.

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1976.

Decided Nov. 15, 1976.

As Amended Nov. 29, 1976.

Robert W. Harrington, Boston, Mass., by appointment of the Court, with whom Judith E. Diamond and Harrington & Gormley, Boston, Mass., were on brief, for Alfonzo Cain, appellant.

John P. White, Jr., Boston, Mass., by appointment of the Court, with whom Paul P. Perocchi, Christopher Dye, and Crane & Inker, Boston, Mass., were on brief, for Rommie Loudd, appellant.

Paul F. Healy, Jr., Asst. U. S. Atty., Washington, D.C., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CLARK, Associate Justice, U.S. Supreme Ct. (Ret.),* and CAMPBELL, Circuit Judge.

* Sitting by designation

Mr. Justice CLARK:

On March 12, 1975, the appellants, Alfonzo Cain and Rommie Loudd, along with Barbara Tripp,[1] were indicted for distribution of cocaine on February 5, 1975, to Steve Cox, an undercover agent for the Sheriff's Department of Orange County, Florida, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. All three were found guilty by a jury on February 9, 1976; Loudd was sentenced to 2 years imprisonment, Cain to one year, and each was given a three-year parole term.

The facts may be stated briefly. Cox represented himself as a businessman with substantial financial resources; Cain was a former professional football player and errand boy for the Florida Blazers (World Football League), and Loudd was general manager of the Blazers. Cox met Loudd through Cain on January 28, 1975. After the meeting, Cain told Cox that Loudd could obtain quantities of cocaine from Boston. The next day the three men met again, Cain indicating that Loudd was ready to go to Boston to finalize the transaction. Loudd explained that Cox could purchase a sample in Boston, and, if satisfactory, a larger amount could be delivered to Cox in Orlando, Florida. Loudd identified his source in Boston as a "tall funky chick."

On February 3, 1975, the three men, together with an undercover agent, Tomlinson, who travelled as a business associate of Cox, flew to Boston, Cox having paid for Cain's ticket. Upon arrival, Cox, Tomlinson, and Cain went to the Ramada Inn, while Loudd went to the Cape.

Around 2:30 p. m. the following day, Cox, at the invitation of Cain, joined Loudd, Cain, and Barbara Tripp in Cain's room. After some general discussion, Cox inquired as to the price of cocaine and the time he could obtain the sample. Loudd referred him to Tripp, who told him the price was $1,500 to $1,600 an ounce. Cox indicated that this was high and Loudd interposed that it was the "best coke" and "that was the price in Boston." Before leaving the room, Loudd told Cox that he would be back in touch with him that afternoon through Cain. Loudd called Cox over to the door, advising him: "This (Tripp) is the chick that I mentioned to you in Orlando. She has the access for the cocaine and she'll get in touch with you and Al Cain later this afternoon and just sit tight, the thing will be put together." Cox then wrote his pseudonym "Scott Ellis" and his Florida phone number on a slip of paper and gave it to Tripp, who, in turn, gave Cox her telephone number. After Loudd and Tripp left, Cox asked Cain if there was a problem, and he replied that this was just a get-together meeting so they would know each other; that Tripp was the "tall, funky chick" that Loudd had mentioned in Florida as his cocaine contact, and that everything "would be okay."

Pursuant to arrangement, Cox met Cain at 7:30 p. m., and they went to the Copley Plaza Hotel where they met with Loudd and Tripp about 9 p. m. Tripp asked Cox to advance her $1,500, saying she would return with the cocaine; Cox refused, but said he would buy the cocaine the next day. After a brief sojourn to Tripp's apartment in Cambridge, Cox returned to his room at the Ramada Inn. He went to Tripp's apartment the next morning and purchased the cocaine for $1,500. He later gave the packet containing the cocaine to Agent Burton of the Drug Enforcement Administration in Boston. It tested 58% cocaine.

After returning to Florida, Cox met with Loudd and Cain at his apartment in Maitland on February 22nd. Loudd told him the Boston trip was a rehearsal, a test to check him out. He further advised Cox that Tripp could not provide the kilo amounts of cocaine Cox wanted, so he had been in touch with someone at Muhammed Ali's

---

1. Tripp was also charged under 21 U.S.C. § 846 with conspiracy to distribute cocaine involving the same incident. Both Cain and Loudd were named co-conspirators, but neither was indicted.

training camp. This source, Loudd stated, could supply the needed amounts, and Cain would deliver it to Cox. On March 7, 1975, Tripp was arrested in her apartment at Cambridge. A search of her purse produced the slip of paper Cox had given her on February 4th.

The appellants raise eight issues, two of which are identical. The latter two urge reversal because (1) the prosecutor stated in his closing argument that the appellants were guilty and (2) a directed verdict should have been granted because of insufficiency of the evidence.

■ Turning first to the prosecutor's remarks, the portion of the argument of which appellants complain reads:

> Mr. Loudd used these other, these other two, and they are guilty. They committed the crime. One actually transacted it [Tripp]. The other one [Cain] facilitated its transaction . . . He [Loudd] used them. They are guilty. The government has proven it. But he [Loudd] is guilty also, and we have proven that because his place is in the hierarchy. 4 Tr. 11.

It is, of course, elementary that statements of counsel as to personal belief or opinion are improper. *Greenberg v. United States,* 280 F.2d 472, 475 (1st Cir. 1960); *Harris v. United States,* 131 U.S.App.D.C. 105, 402 F.2d 656, 658 (1968).

■ This circuit's standard for prosecutorial opinion is set forth in *Patriarca v. United States,* 402 F.2d 314 (1st Cir. 1968), *cert. denied,* 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567:

> "[The Supreme Court seems] to define the impermissible conduct as an expression of belief which indicates that the prosecutor is relying on information other than that which has been presented in court. *Greenberg* [*v. United States,* 280 F.2d 472 (1st Cir. 1960)] proscribes expression of personal belief in the testimo-

ny, not only because counsel would then in effect be a witness not under oath or subject to cross-examination but because the false issue of credibility of counsel, with government having the advantage, would be injected." *Id.* at 321.

While the words used by the prosecutor in this case were perhaps overly cryptic, inviting challenge, they pass *Patriarca's* double test. They neither imply inside information nor turn the credibility of counsel into an issue.

■ The language of the argument clearly indicates that the prosecutor is calling for an assessment of the evidence rather than simply expressing a personal opinion as to guilt. This conclusion is bolstered by the remarks: "The government has proven it" and "we have proven." These phrases tie the claim of guilt to the evidence, rather than to the prosecutor's opinion. We also note that the trial judge's charge to the jury was explicit inasmuch as he instructed the jury to decide the case solely on the direct and circumstantial evidence presented, further giving a complete explanation of both direct and circumstantial evidence.[2]

As to the motion for directed verdict, we cannot see how the appellants could seriously claim that the evidence was insufficient. In fact, this case is replete with uncontradicted testimony, and might well be characterized as "open and shut."

■ The remaining points likewise have no merit. Loudd claims the court failed to charge that before it could find him guilty, it must specifically find that each element of the offense of aiding and abetting was proven beyond a reasonable doubt. Loudd did not raise this point in the trial court nor list it as an error on appeal. Under Rule 30 F.R.C.P., he cannot assign it now. However, we have checked the record and find that the charge did specifically include such a provision. See 4 Tr. 64, 65.

**2.** 4 Tr. 70–72.

■ Loudd next claims that a mistrial should have been granted because on cross-examination of Cox by Tripp's counsel, Cox testified that he had met Cain and Loudd on other occasions "and had criminal proceedings against each of the defendants, other than Miss Tripp." When Cox blurted this out, Loudd moved for a mistrial but said nothing about wanting a curative instruction and the judge volunteered none. While it would have been preferable for the judge to have given a curative instruction to the jury *sua sponte, see United States v. Plante,* 472 F.2d 829, 831 n. 3 (1st Cir.), *cert. denied,* 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411 (1973), we cannot conclude that there was reversible error in the court's failure to do so in light of Loudd's lack of objection to the line of questioning that had led up to Cox's statement coupled with Loudd's failure to request a limiting or curative instruction afterward. *Cf. Dichner v. United States,* 348 F.2d 167, 168 (1st Cir. 1965). It should have been obvious to Loudd, as to Cain, that the questioning concerning Cox's investigatory files ran the risk of eliciting the very sort of answer Cox gave yet no steps were taken to head the danger off either by objecting or by asking the judge privately to have the witness cautioned. Moreover, to the extent Cox's remark suggested that Loudd was involved in another recent drug offense (Cox being known to the jury as a narcotics agent), the remark related to information that, in the district court's discretion, was at least potentially admissible. Fed.R.Evid. 404(b), 609(a)(1); *see United States v. Plante, supra,* 472 F.2d at 831; *Dirring v. United States,* 328 F.2d 512, 514–15 (1st Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964).

■ Loudd also objects to his not being permitted to call his co-defendant Cain to the stand. Prior to this prosecution, Cain had submitted to a deposition in other criminal proceedings against Loudd in Florida which involved other criminal acts committed in Florida. It is hornbook law that the waiver is limited to the particular proceeding in which the witness appears. *United States v. Johnson,* 488 F.2d 1206 (1st Cir. 1973).

■ Finally, Cain asserts that counsel for Loudd commented on Cain's failure to testify in closing argument.[3] There is no basis for such a claim. Counsel for Loudd was merely making introductory comments on the law without any reference whatever to Cain. The statement was made without objection and was identical with that later included in the judge's charge. It was neither intended nor could the jury infer that it was a comment on Cain's failure to take the stand. See: *United States v. Wilson,* 500 F.2d 715, 721 (5th Cir. 1974), *cert. den. sub nom. White v. United States,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

In concluding, we find it appropriate to say that this case is typical of a growing percentage of the cases on our docket. Appellants have filed over 60 pages of briefs on issues virtually all of which were clearly foreclosed against them. This practice is flooding this Court with frivolous appeals which take our time from meritorious cases and necessarily delay the decision of the court in all of the cases on the docket. We are hopeful that counsel will continue to give every case their serious professional attention, but that when issues are clearly frivolous, they will not pursue them blindly and with dogged determination, drowning the courts in an ocean of paper and strained argument, while knowing the law is against them. If the Bar would cooperate more fully with the courts, giving greater attention to this problem, the mounting dockets we now face would disappear. See: *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

*Affirmed.*

---

**3.** The statement here in question reads: " . . the burden of proof is on the government to prove beyond a reasonable doubt each and every material allegation of the indictment, and that the defendant is cloaked with the presumption of innocence, and that there is no burden on a defendant to go forward and defend himself. And if a defendant fails to take the stand on his own behalf, no adverse inference can be drawn from that fact." 4 Tr. 45.