UNITED STATES of America, Appellee,

v.

**Jose Ramon SANTIAGO BARBOSA, Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Jesus CABALLERO DIAZ, Defendant, Appellant.**

**Nos. 80–1305, 80–1312.**

United States Court of Appeals, First Circuit.

Argued Sept. 9, 1981.

Decided Dec. 9, 1981.

David Efron, Hato Rey, P. R., by appointment of the Court, for defendant, appellant Jose Ramon Santiago Barbosa.

Francisco M. Lopez Romo, San Juan, P. R., by appointment of the Court, for defendant, appellant Jesus Caballero Diaz.

H. Manuel Hernandez, Asst. U. S. Atty., Hato Rey, P. R., with whom Raymond L. Acosta, U. S. Atty., Hato Rey, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH, Senior Judge, BREYER, Circuit Judge.

ALDRICH, Senior Circuit Judge.

In a two count indictment Otoniel Rivera Rivera (Rivera) was charged with intent to distribute and the actual distribution of two ounces of heroin (Count 1), and, together with appellants Jose Ramon Santiago Barbosa (Santiago) and Jesus Caballero Diaz (Caballero) as aiders and abetters, intent to distribute and actual distribution of one ounce of cocaine (Count 2), both on or about October 16, 1979. Two days before trial Santiago and Caballero, alleging prejudice, moved for severance of Counts 1 and 2 for trial. Their motion was denied and all defendants were convicted. Because of this denial, and for other reasons, Santiago and Caballero (sometimes, collectively, appellants) appeal. We affirm.

■ The motion for severance asserted a number of grounds, some frivolous on their face, and others purely conclusory, and unsupported in any manner. On such basis, as the district court held, the motion must be denied as matter of law. Defendants presently argue as if they had made a full showing of facts in support of their conclusory statements in the motion. To argue as if they had made such a showing is impermissible. We will, however, make an exception, and assume that a proper foundation was timely laid, but we will not, of course, assume anything more than the record shows could have been available in the first place. This is a very generous assumption.[1]

■ At trial it appeared that the transactions alleged in both counts occurred on October 16, at the apartment of one Carmen Vega Collazo (Vega), a paid government informant. Vega testified that Rivera came there and offered her "good heroin" at $1,800 an ounce; that, as he was leaving, a Drug Enforcement agent, also named Rivera, hereinafter the agent, came in and she informed him of the offer; that the agent reached Rivera by telephone and arranged a deal; and that the agent then set up video and sound recording equipment in the apartment, and when Rivera returned, bought two ounces of heroin from

---

1. One of the serious defects in the motion, so far as Santiago was concerned, was that it concluded with a request for a 30-day postponement of the trial because counsel had been unable to make contact with his client. Defendant was on bail, and the trial date had been known for a week. A court might look at any motion with jaundiced eye under such circumstances.

him. The agent then left. He testified that as he was leaving he observed Caballero and some others in a car outside.

Appellants then entered the apartment. Santiago, according to Vega, gave money to Rivera, saying it was for an ounce of cocaine. She further testified that Rivera then gave Caballero an ounce of cocaine, Caballero saying he wanted it better quality than the last time; that they all tested it; that it was cocaine, and that Caballero said it was good. Parts of her testimony were corroborated by the video tape which, before running out, showed Rivera and Santiago counting out money, while, arguably, Caballero looked on.

On this showing we may reject appellants' appeal from the denial of their motions for directed verdicts of acquittal without discussion.[2] Santiago's statements that the "only evidence against [him was] a video tape recording," and that "[o]nly circumstantial and highly prejudicial but immaterial evidence was presented against this defendant" appear to be roundabout ways of saying we should disregard Vega's testimony. There is no basis for such a claim. Similarly, Caballero's statement that the only evidence that the substance sold was, in fact, cocaine, was Vega's opinion, would disregard her testimony that he himself had sampled and approved it. Vega's testimony, together with the film, was more than sufficient to support conviction of both defendants.

■ Turning to severance, both appellants moved only under Rule 14,[3] but on appeal they seek to include Rule 8(b),[4] alleging improper joinder. This is too late, *United States v. Ochs*, 2 Cir., 1979, 595 F.2d 1247, 1260 & n.11, *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328; *Cupo v. United States*, D.C.Cir., 1966, 359 F.2d 990, 993, *cert. denied*, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549; *see United States v. Quinones*, 1 Cir., 1975, 516 F.2d 1309, 1312 (per curiam), *cert. denied*, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76, at least in the absence of plain error, but there was no error under either rule, even assuming defendants had been timely.

■ There are three requirements. Under Rule 8(b), which permits joinder of a defendant who is not common to all counts, there must be a "series of acts or transactions." Here the defendant seller, Rivera, was the same in both counts; the place of sale was the same, and the second sale began five minutes after the first was completed. The case is even clearer than *United States v. Martinez*, 1 Cir., 1973, 479 F.2d 824. There defendants Garcia and Rodriguez were charged with distributing heroin at an apartment in Salem, Massachusetts on March 9 (Count 1) and March 14 (Count 2), in both instances to the same undercover agent. Defendants Carrion and Olmo were joined as aiders and abetters in Count 1; appellant Martinez in Count 2. In considering Rule 8(b) we pointed out that there was a common series of sales by defendants Garcia and Rodriguez, even though five days apart. The fact that Martinez was unconnected with the first did not mean there was not a series. So, here, the fact that appellants were not connected with the

---

2. We do, however, say that we did not need from defendant Santiago a six page recitation of the elementary principles under which such a motion is to be considered, and of the meaning of reasonable doubt.

3. F.R.Cr.P. 14. Relief from Prejudicial Joinder
   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

4. F.R.Cr.P. 8(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

first sale is irrelevant; indeed, lack of total identity is the whole purport of the rule.

■ Second, our cases under Rule 8(b) require the showing of a benefit to the government. *See King v. United States*, 1 Cir., 1966, 355 F.2d 700, 704. Here this factor was clear. In addition to the normal efficiencies of a single trial, the principal witness, Vega, was the same for both counts; the agent's testimony, although not as significant in Count 2, was needed for both,[5] and the apartment and video tape setup were the same in both.

■ The third issue, which arises under Rule 14, is the question of excessive prejudice to appellants. To succeed, appellants must show that the district court's refusal to sever was an abuse of discretion which deprived them of a fair trial and resulted in a possible miscarriage of justice. *United States v. Davis*, 1 Cir., 1980, 623 F.2d 188, 194–95. Judged by this standard, appellants' allegations fall far short of the mark. The jury was not likely to confuse the counts, the two events being quite different. The court and counsel could, and at times did, caution the jury, and we see no reason why the jury could not comply. The claims that evidence introduced against Rivera on Count 1 "spilled over" to appellants on Count 2, and that the corroboration of Vega's Count 1 testimony bolstered her credibility with the jury as to her largely uncorroborated Count 2 testimony, even if true, show only that severance might have increased appellants' chances for acquittal. That is not enough. *E.g., Martinez*, ante, 479 F.2d at 828. While appellants seek to make much of the fact that Rivera's counsel asked unfortunate questions with respect to Count 1, bringing to the jury's attention Rivera's criminal record, *cf. United States v. Cain*, 1 Cir., 1976, 544 F.2d 1113, 1117, this has no bearing on the severance mo-

tion, since it could not have been known in advance. But even if it had been known, it would not have mandated separate trials. *United States v. Robinson*, 7 Cir., 1974, 503 F.2d 208, 214–15, *cert. denied*, 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 427. It is routine that there are side effects, good as well as bad, when there are more than one counsel.

What appellants particularly stress is that Rivera's "physical appearance . . . [and the] negative publicity afforded by the local press" would "rub off" on them. They overlook that Rivera would figure in their trial even if they were tried separately.

Finally, in Caballero's separate point, post, that he was inadequately represented, trial counsel is criticized for not having demonstrated to the motion court that "there were incompatible and irreconcilable defenses." Appellate counsel must be tarred with the same brush; we have yet to learn what these differences are.

In sum, whether we view the alleged prejudice from a pretrial perspective, or with the benefit of hindsight, the district court acted well within its discretion in denying the motion.

*Representation*

■ We are not at all impressed by Caballero's criticism of his trial counsel, except with respect to inadequate presentation of the motion for severance. This we have shown to have been of no consequence. As a general proposition we will not charge counsel with improper motion procedure unless they bungled an opportunity to make such a compelling showing that it would have left the court little or no discretion. This is far from the present case. We have examined the record and find no other deficiency. Rather, this seems an unfortunate example of a defendant's straining to shift the blame.[6]

---

5. Caballero's assertion that Vega was "the only witness" against appellants is incorrect—he was seen immediately outside by the agent.

6. We cannot pass, on a direct appeal, upon defendant's outside-the-record claim that counsel erred in advising him not to take the stand, *United States v. Maguire*, 1 Cir., 1979, 600 F.2d

330, 332 n.1 (per curiam), *cert. denied*, 444 U.S. 876, 100 S.Ct. 159, 62 L.Ed.2d 104, but we remark that we are very slow to second guess counsel on this much too easy complaint. *See United States v. Bosch*, 1 Cir., 1978, 584 F.2d 1113, 1121–22.

*Prosecutorial Misconduct*

■ Although we find nothing in Santiago's charges of prosecutorial misconduct, our general sensitivity to this subject leads us to say why we do not. First, defendant blames the prosecutor because the agent gave testimony particularly damaging to Rivera and beyond the confines of the case. If the evidence was excessive, the answers were, nevertheless, responsive to questions asked by Rivera's counsel. This is not prosecutorial misconduct. There is no duty on a prosecutor to instruct government witnesses not to give responsive damaging answers to questions by defense counsel.

■ Second, in the course of some five pages of recitation of elementary principles of ethical standards,[7] Santiago asserts that the assistant U.S. Attorney "misstates the contents of the film," and impermissibly vouchsafed his own opinion to the jury. There is a general, and a specific, answer to both of these claims. The general, and sufficient, answer is that no objections were made at the time. If evidence is misstated, there should be an opportunity for correction, not a hidden point for an appeal. But even more important in the present case, it is not at all clear on the record that the prosecutor was not correctly referring to a mixture of the tape's showing and the informant's oral testimony. This was a classic case for speaking up in order to afford counsel and court an opportunity for clarification or correction. *E.g., Holden v. United States*, 1 Cir., 1968, 388 F.2d 240, 242–43, *cert. denied*, 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132.

■ The need for a contemporaneous objection may be less with respect to the prosecutor's giving his personal opinion. However, that obligation is clear when, at best, there is an ambiguity. *See United States v. Miceli*, 1 Cir., 1971, 446 F.2d 256, 261. In the present case the assistant U.S. Attorney, in his opening to the jury before presenting the evidence, stated,

"The government today is going to prove ..." followed by a description of the evidence. Later, he commenced his final argument by saying,

"The government told you it was going to prove ..." again followed by a description of the evidence. He concluded,

"Now, ladies and gentlemen of the jury, this is what the government told you it was going to prove. And that, in fact, is what the government proved."

■ We recognize that defense counsel, particularly, perhaps, when court appointed, must omit no possible points, but the place to start is with the facts and pertinent authorities rather than simply to deal, first and last, in generalities. Had this been done, it would have appeared that there was no error. The fair meaning of the prosecutor's statements was summary and argument, not personal endorsement. *Compare*, "They are guilty. The government has proved it," *United States v. Cain*, 1 Cir., 1976, 544 F.2d 1113 (not error), *with* "I personally believe that I have proven the case ... beyond any doubt," *United States v. Gonzales Vargas*, 1 Cir., 1977, 558 F.2d 631 (error). The phraseology in the present case was more innocuous than in *Cain*.

■ When the law is clear, and counsel has no possible case, his duty to his client does not, and should not, include dreaming the impossible dream at the expense of the government, if court appointed, and at the expense of the time of the court in any event. In determining the fee allowance to court appointed counsel we take into consideration both this factor and the degree to which counsel may have been deficient in their responsibility to the court to make a fair presentation of the evidence.

*Affirmed.*

7. Counsel makes one error, viz., that a prosecutor's duty "differs from that of the usual advocate." This may be true in some areas, but certainly not in the present one, as we pointed out in *United States v. Tropeano*, 1 Cir., 1973, 476 F.2d 586, 588 n.2, *cert. denied*, 414 U.S. 839, 94 S.Ct. 90, 38 L.Ed.2d 75.