*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STACEY ALLEN GRAHAM, ) | |
| ) | Supreme Court No. S-16554 |
| Petitioner, ) | |
| ) | Superior Court Nos. 3AN-14-07194, |
| v. ) | 3AN-14-07195, 3AN-15-08741 CI |
| ) | (Consolidated) |
| DAYNA DURR, individually and in ) | |
| her capacity as Personal Representative ) | O P I N I O N |
| of the Estate of Jordyn L. Durr; ) | |
| JAMEY DURR; MARKUS DURR; ) | No. 7311 – October 26, 2018 |
| JACK DURR; SHANNA ) | |
| McPHETERS, individually and in her ) | |
| capacity as Personal Representative of ) | |
| the Estate of Brooke Christina ) | |
| McPheters; GARY McPHETERS; ) | |
| PUGET SOUND PIPE & SUPPLY ) | |
| COMPANY; and ARAMARK ) | |
| SERVICES, INC., ) | |
| ) | |
| Respondents. ) | |
| ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Renee McFarland, Assistant Public Defender, Quinlan Steiner, Public Defender, and Kimberlee A. Colbo, Hughes White Colbo Wilcox & Tervooren, Anchorage, for Petitioner. Christine S. Schleuss, Law Office of Christine Schleuss, and Colleen A. Libbey, Libbey Law Offices, Anchorage, for Respondents Dayna Durr, individually and in

her capacity as Personal Representative of the Estate of Jordyn L. Durr; Jamey Durr; Markus Durr; Jack Durr; Shanna McPheters, individually and in her capacity as Personal Representative of the Estate of Brooke Christina McPheters; and Gary McPheters. No appearance by Respondents Puget Sound Pipe & Supply Co. and Aramark Services, Inc. Susan Orlansky, Reeves Amodio LLC, Anchorage, for Amicus Curiae Alaska Association of Criminal Defense Lawyers. Nancy R. Simel, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I. INTRODUCTION

Stacey Graham pleaded guilty to second-degree murder after striking and killing two pedestrians while driving intoxicated. He is now being sued by the victims' families. Graham, who is currently appealing his sentence, argues that he may assert the privilege against self-incrimination in response to the families' discovery requests based on (1) his sentence appeal and (2) the possibility that he might file an application for post-conviction relief if his sentence is upheld. We conclude that Graham may assert the privilege against self-incrimination in the civil proceeding based on the possibility that the decision on his pending sentence appeal may require a new sentencing proceeding where his compelled testimony in the civil proceeding could be used to his disadvantage. We decline to decide whether Graham is entitled to assert the privilege based on the possibility that he might eventually file an application for post-conviction relief because that issue is not ripe for review.

## II.   FACTS AND PROCEDURAL HISTORY

### A.   Facts

In August 2013 Stacey Graham struck and killed pedestrians Jordyn Durr and Brooke McPheters after losing control of his vehicle.  Graham was charged with two counts of second-degree murder, two counts of manslaughter, and one count of driving under the influence.

In May 2014 the families of Durr and McPheters (Durr) filed suit against Graham and his alleged employer Puget Sound Pipe & Supply Company (Puget Sound).  Graham refused to respond to a portion of Durr's complaint, asserting his Fifth Amendment privilege against self-incrimination.[1]  In October Graham pleaded guilty to two counts of second-degree murder under a negotiated plea agreement.  Shortly thereafter Graham provided initial disclosures to the Durrs.[2]  But he refused to provide the factual basis for his defenses or the identity of persons potentially responsible for the accident, again asserting his privilege against self-incrimination.

Graham was sentenced in February 2015.  Durr asserts that, prior to sentencing, Graham prepared a written statement for the sentencing judge and participated in an interview with a probation officer in which he admitted that he had caused the accident.  Durr further contends that the oral and written statements were included in a presentence report.  In a statement presented at the sentencing hearing,

---

[1]     U.S. Const. amend. V ("No person . . .  shall be compelled in any criminal case to be a witness against himself . . . .").

[2]     *See* Alaska R. Civ. P. 26(a)(1) (requiring a party to make certain initial disclosures without awaiting a discovery request).

Graham described the accident and expressed his remorse. He was sentenced to 20 years with 4 years suspended on each count, for an active term of imprisonment of 32 years.[3]

In early March Graham filed a notice of appeal. He argued that the sentencing judge had committed several evidentiary errors, that the court should have either deferred to recommendations in the presentence report or provided a rationale for failing to do so, and that the sentence imposed was excessive. Graham asked the court of appeals to vacate his sentence and remand the case for resentencing.[4]

At about the same time Durr served a series of discovery requests on Graham. Graham refused to answer some of the questions in these requests, explaining that he had appealed his sentence and asserting his Fifth Amendment privilege against self-incrimination. In an April email to Durr, Graham's attorney stated that she "fully anticipate[d] that Mr. Graham will be asserting his 5th Amendment privileges" at an upcoming deposition. She asked whether Durr would prefer to "proceed with the deposition" or "postpone it and perhaps stay the civil case until the criminal proceedings have completely played out." The deposition did not occur.

In February 2016 Puget Sound served discovery requests on Graham. Graham refused to respond to these requests, again asserting his Fifth Amendment privilege against self-incrimination.

B.     Procedural History

In March 2016 Puget Sound moved to compel Graham to participate in discovery and to preclude Graham from asserting a privilege against self-incrimination. Durr joined in the motion.

---

[3]     Under his plea agreement, Graham had agreed to a sentencing range of 13 to 20 years of incarceration per count for a total range of 26 to 40 years.

[4]     The court of appeals heard oral argument on June 27, 2017.

In its memorandum in support of the motion, Puget Sound argued that Graham no longer retained a Fifth Amendment privilege. The company contended that "[a] risk one's testimony could increase criminal penalties is a necessary condition precedent to the assertion of the privilege . . . ." It noted that Graham was "only appealing his sentence," and that in Alaska a sentence imposed on resentencing cannot exceed the original sentence.[5] Puget Sound argued in the alternative that Graham had waived his privilege by making statements at the sentencing hearing and had not contested most of the facts in the presentence report. It lastly argued that even if Graham retained a privilege, he "should be compelled to testify to the extent the Court concludes he can be ordered to do so without placing himself at risk of penalty in his criminal case."

Graham responded that he "retains the right to invoke the privilege until he has exhausted his appeals and his right to seek post-conviction relief." He also argued that his comments at the sentencing hearing could not support a conclusion that he had waived his Fifth Amendment privilege in a *subsequent* judicial proceeding.

The superior court granted Puget Sound's motion to compel. The court ruled that "Mr. Graham's Fifth Amendment privilege against self-incrimination does not apply in the circumstances presented in this case."[6] It explained that Graham was only appealing his sentence, and that Graham could not be subjected to additional penalties

---

[5]     *Shagloak v. State*, 597 P.2d 142, 145 (Alaska 1979).

[6]     The order did not address the privilege against self-incrimination under the Alaska Constitution. *See* Alaska Const. art. I, § 9 ("No person shall be compelled in any criminal proceeding to be a witness against himself."). But in its motion to compel, Puget Sound had asked the court to rule that Graham could not assert the privilege "under the Fifth Amendment . . . [or] Article I, Section 9 of the Alaska Constitution . . . ."

under Alaska law even if his appeal were successful.[7]  Because Graham could not "face further criminal penalties" as a consequence of his appeal, the court concluded that the case law he had cited in his opposition was "inapposite."

The court also ruled that the possibility Graham might pursue post-conviction relief was "too speculative for the privilege against self-incrimination to apply."  It explained that Graham had "not indicated the basis upon which he would likely file for post-conviction relief."  And it again emphasized that he "simply cannot be punished more harshly than he already has been."

The court acknowledged that there was one way Graham's participation in discovery could present a risk of incrimination:  if he had lied during the criminal proceedings, he could face perjury charges.  Accordingly, the court stated that it would "hold an ex-parte hearing with Mr. Graham . . . to determine the basis for [his] claimed privilege and whether Mr. Graham could incriminate himself if he is forced to participate in discovery."  If the court found "no basis for claiming the privilege," he would be compelled to "answer interrogatories and discovery requests already served to which he objected on Fifth Amendment grounds, appear and testify at deposition[,] and respond to further discovery requests."

Graham's motion for reconsideration was deemed moot.  In December 2016 Graham attempted to initiate an action for post-conviction relief.  The paperwork was filed in the Alaska Court of Appeals, but did not result in a case being opened.

Graham then petitioned for interlocutory review.  We granted his petition and directed the parties to address two questions in their briefing:

> a.  Was Graham entitled to assert the privilege against self-incrimination based on the possibility that he may file an

---

[7]     *Shagloak*, 597 P.2d at 145 (holding that a sentence imposed on resentencing ordinarily cannot exceed the original sentence).

application for post-conviction relief?

b. Was Graham entitled to assert the privilege based on the possibility that the decision on his pending appeal may require a new sentencing proceeding?

Durr and Graham submitted briefs; Puget Sound declined to do so. We also invited the State of Alaska and the Alaska Association of Criminal Defense Lawyers to participate as amici curiae. Both the State and Association of Criminal Defense Lawyers submitted briefs.

## III.    DISCUSSION

### A.    Graham Retains His Privilege Against Self-Incrimination Until His Sentence Appeal Becomes Final.

The superior court's ruling on Puget Sound's motion to compel would limit Graham's ability to invoke his privilege against self-incrimination. Graham first challenges this order on the grounds that the privilege extends through the direct appeal process.[8] While a trial court's ruling on a discovery motion is reviewed for abuse of discretion,[9] the scope of the privilege against self-incrimination "is a question of constitutional law which [we] decide de novo."[10]

The privilege against self-incrimination is guaranteed by both the Fifth Amendment of the United States Constitution and by article I, section 9 of the Alaska

---

[8]    During oral argument Durr's counsel "conced[ed] that Mr. Graham . . . can invoke his Fifth Amendment privilege through the completion of his sentence appeal." She asserted however that the plaintiffs could "still take a deposition and inquire into things that are not covered by the privilege" even if he retained the privilege. We acknowledge that the privilege may be invoked only when certain conditions are met. *See infra* note 12 and accompanying text.

[9]    *See Armstrong v. Tanaka*, 228 P.3d 79, 82 (Alaska 2010).

[10]    *State v. Gonzalez*, 853 P.2d 526, 529 (Alaska 1993).

Constitution. The privilege "can be asserted in any proceeding," including civil proceedings.[11] But as Durr notes, the privilege does not confer a right to remain silent at all times or under all circumstances. Rather a speaker may assert the privilege against self-incrimination only when directed to provide answers that would pose a "real and substantial hazard" of incriminating the speaker.[12] Accordingly we must determine whether Graham's testimony during the pendency of his sentence appeal could expose him to a real and substantial hazard of incrimination.

In *State v. Gonzalez* we indicated that a defendant who had appealed a *conviction* retained the privilege against self-incrimination until the conviction became final.[13] Most state and federal courts have likewise concluded that a convicted defendant's testimony may present a "real and substantial hazard" of incrimination during the pendency of an appeal from a conviction.[14] The rationale for this approach

---

[11]     *Kastigar v. United States*, 406 U.S. 441, 444 (1972).

[12]     *E.L.L. v. State*, 572 P.2d 786, 788 (Alaska 1977).

[13]     853 P.2d 526, 529 n.1 (Alaska 1993). Persons convicted of a crime in Alaska may generally appeal to the Alaska Court of Appeals. *See* AS 22.07.020(a)(1), (c), (d). If the Alaska Court of Appeals affirms a trial court's judgment, "that judgement becomes final (1) when the time for petitioning the supreme court expires (if no petition for discretionary review is filed) or (2) when the supreme court resolves the petition for discretionary review (by either granting the petition and ruling on the merits, or by denying the petition outright)." *Alex v. State*, 210 P.3d 1225, 1227 (Alaska App. 2009); *see Gonzalez*, 853 P.2d at 529 n.1 (conviction not yet final where court of appeals had affirmed conviction and remanded sentence).

[14]     *See, e.g., United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004); *United States v. Duchi*, 944 F.2d 391, 394 (8th Cir. 1991); *Holsen v. United States*, 392 F.2d 292, 293 (5th Cir. 1968); *State v. Gretzler*, 612 P.2d 1023, 1051 (Ariz. 1980); *State v. Johnson*, 287 P.2d 425, 429-30 (Idaho 1955); *State v. Linscott*, 521 A.2d 701, 703-04 (Me. 1987); *Ellison v. State*, 528 A.2d 1271, 1278 (Md. 1987); *Johnson v.*

(continued...)

is straightforward: while direct appeal from a conviction is pending or remains available, there is a significant possibility that the conviction might be reversed — and that "any disclosures [a defendant] makes would be used to incriminate him upon any retrial that follows."[15]

Unlike the defendant in *Gonzalez*, Graham appeals only his *sentence*, not his conviction.[16] But in *Mitchell v. United States* the United States Supreme Court clarified that a defendant may invoke the Fifth Amendment privilege against self-incrimination when the defendant's testimony might adversely affect the defendant's sentence — even when the defendant's conviction is no longer at issue.[17] Furthermore

---

[14] (...continued)
*Fabian*, 735 N.W.2d 295, 310 (Minn. 2007); *Myers v. State*, 154 P.3d 714, 714-15 (Okla. 2007); *State v. Ducharme*, 601 A.2d 937, 945 (R.I. 1991).

[15] 1 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 121 (7th ed. 2013); *see also Ellison*, 528 A.2d at 1277 ("While a majority of appeals by defendants in criminal cases may not result in reversals and further proceedings, a criminal defendant's chance of overturning a verdict or sentence on appeal certainly does not fall into the category of a mere remote possibility.").

[16] Alaska appellate procedure distinguishes between "sentence appeals" and "merit appeals." A sentence appeal challenges only the excessiveness of the sentence. *See Coffman v. State*, 172 P.3d 804, 808 (Alaska App. 2007). A merit appeal considers "the legality of a sentence, or the lawfulness of the procedures under which the sentence was imposed, or the sufficiency of the evidence to support the findings that affected the judge's sentencing authority . . . ." *Id.* Thus in some instances — as in the present case — a defendant might file a merit appeal even if he is appealing only his sentence.

[17] 526 U.S. 314, 327 (1999); *see also id.* at 326 ("Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony."); *Estelle v. Smith*, 451 U.S. 454, 462 (1981) ("The essence of [the privilege against self-incrimination] is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.' "
(continued...)

the few courts that have expressly considered whether defendants *appealing* only their sentences retain the privilege have concluded that they do. In *Ellison v. State* the Maryland Court of Appeals concluded that "during the pendency of [a sentence appeal], the criminal judgment is not so finalized that the possibility of future proceedings on the charges is remote."[18] And in *People v. Villa* a Colorado appellate court reached a similar conclusion: because the privilege against self-incrimination "protects one from being subject to the risk of greater punishment by evidence furnished from his own lips," the privilege "cannot rationally be limited to situations in which . . . only the conviction is being appealed."[19]

We find the *Villa* and *Ellison* courts' reasoning persuasive. *Mitchell* and related cases establish that a defendant may assert the privilege against self-incrimination when faced with a real and substantial hazard that the defendant's testimony could adversely affect the defendant's sentence.[20] If Graham's appeal from his sentence is successful, there is a significant possibility that compelled testimony might be considered by a resentencing court.[21] Accordingly the rationale for the approach followed in

---

[17]     (...continued)
(emphasis in original) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581-82 (1961))).

[18]     528 A.2d at 1278.

[19]     671 P.2d 971, 973 (Colo. App. 1983); *see also Gretzler*, 612 P.2d at 1051 ("The Fifth Amendment privilege is available to a convicted person when his conviction *or sentence* is being appealed." (emphasis added)).

[20]     *See, e.g.*, *Mitchell*, 526 U.S. at 327.

[21]     *See Tookak v. State*, 680 P.2d 509, 511 (Alaska App. 1984); WAYNE R. LAFAVE, ET AL., 6 CRIMINAL PROCEDURE § 26.5(a) (4th ed. 2015) ("Post-offense conduct . . . is generally taken into account when setting a sentence. Should resentencing be required, post-sentence conduct will be considered as well.").

*Gonzalez* and similar cases also applies to Graham's appeal of his sentence; during the pendency of that appeal, compelled testimony could present a real and substantial hazard of "adverse consequences" in a future proceeding.[22]

As the superior court noted, our holding in *Shagloak v. State* would preclude a resentencing court from imposing a higher sentence should Graham's appeal be successful.[23] This characteristic of Alaska law differentiates this case from *Villa* and *Ellison*; in both of those cases, the courts explicitly noted that if the defendants' appeals were successful, they could face a higher sentence on resentencing.[24] But this limitation on resentencing courts' discretion does not justify departing from the approach articulated in those cases. The privilege against self-incrimination protects convicted defendants from "adverse consequences [that could] be visited upon the convicted person by reason of further testimony . . . ."[25] Although Graham admittedly cannot face a "greater punishment" than that imposed during his previous sentencing,[26] his compelled testimony during the pendency of his appeal could result in a "greater punishment" than

---

[22]     *Mitchell*, 526 U.S. at 326.

[23]     *See* 597 P.2d 142, 145 (Alaska 1979). As Graham notes on appeal, the superior court also referenced the fact that Graham had entered a guilty plea. But on our reading, the court does not appear to have concluded that Graham's guilty plea had any bearing on whether he retained a privilege against self-incrimination; rather the court noted this fact while explaining why Graham had declined to appeal his conviction. In any event persuasive authority suggests that a convicted defendant who has entered a guilty plea may assert the privilege during the pendency of an appeal. *See Villa*, 671 P.2d at 973; *Ellison*, 528 A.2d at 1278.

[24]     *Villa*, 671 P.2d at 972-73; *Ellison*, 528 A.2d at 1278.

[25]     *Mitchell*, 526 U.S. at 326.

[26]     *See Villa*, 671 P.2d at 973.

he would receive *if he were permitted to invoke the privilege*.[27]  The rule identified by the superior court places an upper boundary on the "adverse consequences" Graham could face during resentencing; it does not eliminate them altogether.

In light of our precedent, persuasive authority from other jurisdictions, and the purpose of the privilege against self-incrimination, we conclude that defendants appealing only their sentences — like defendants appealing their convictions — may invoke the privilege against self-incrimination until their convictions become final.[28]  We therefore hold that Graham may continue to exercise his privilege against self-incrimination during the pendency of his direct appeal.[29]

---

[27]     Courts considering analogous issues have applied similar reasoning.  *See Landeverde v. State*, 769 So. 2d 457, 464 (Fla. App. 2000) ("Because [a defendant] had a pending motion to reduce his sentence, his exposure to incrimination was readily apparent under *Mitchell*."); *State v. Marks*, 533 N.W.2d 730, 734 (Wis. 1995) ("[A] witness who intends to or who has moved to modify his or her sentence may legitimately fear that . . . but for [] additional incriminating testimony there is a strong likelihood the sentencing court would reduce the sentence.  The fear of the defendant in giving incriminating testimony is just as real in this situation as [when] . . . [t]here [is] a *potential danger to* [*the witness*] of an increased sentence resulting from his own testimony." (emphasis and last alteration in original)).

[28]     *See supra* note 13.  To the extent that this interpretation of the privilege is more protective than federal constitutional law, we base our ruling on article I, section 9 of the Alaska Constitution.  *See Munson v. State*, 123 P.3d 1042, 1049 n.48 (Alaska 2005).

[29]     Graham argues on appeal that he did not waive the privilege by providing a statement for sentencing.  Although the parties raised this issue in the trial court, the court's order did not address it.  We "may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below . . . ." *Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 472 n.15 (Alaska 2017) (quoting *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006)).  However "[i]t is hornbook law that the waiver [of the privilege] is limited to the particular proceeding in which the witness

(continued...)

**B.** **The Question Whether Graham Would Retain His Privilege Against Self-Incrimination During Post-Conviction Proceedings Is Not Ripe For Review.**

After granting Graham's petition for interlocutory review, we directed the parties to address whether Graham has a privilege against self-incrimination pending completion of post-conviction proceedings following his appeal. Graham contends that he would retain a privilege against self-incrimination during his first application for post-conviction relief and a conditional privilege during subsequent applications. However he also notes that this issue may not be ripe for review. "Because we are 'the ultimate arbiter' of issues such as . . . ripeness, we review de novo the question of whether a case should be dismissed on prudential grounds."[30]

"The ripeness doctrine requires a plaintiff to claim that either [an] . . . injury has been suffered or that one will be suffered in the future."[31] There is "no set formula" for determining whether a case is ripe for decision.[32] However we have noted that "the central concern of ripeness 'is whether the case involves uncertain or contingent future

---

[29] (...continued)
appears." *State v. Roberts*, 622 A.2d 1225, 1235 (N.H. 1993) (alterations in original) (quoting *United States v. Cain*, 544 F.2d 1113, 1117 (1st Cir. 1976)); *see also Martin v. Flanagan*, 789 A.2d 979, 985 (Conn. 2002); BROUN, *supra* note 15, § 133 n.18 (listing cases). Accordingly, we decline to affirm the court's order on this basis.

[30] *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014) (quoting *State v. Am. Civil Liberties Union of Alaska*, 204 P.3d 364, 368 (Alaska 2009)).

[31] *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001).

[32] *Id.*

events that may not occur as anticipated, or indeed may not occur at all.' "[33] Graham has not yet attempted to assert the privilege against self-incrimination during post-conviction proceedings.[34] Furthermore because we do not know whether Graham will pursue post-conviction relief once his appeal is resolved, it is impossible to determine at this time whether Graham will ever attempt to do so. Accordingly we conclude that the question whether Graham may invoke his privilege against self-incrimination during post-conviction proceedings is not ripe, and we decline to address it at this time.

## IV.   CONCLUSION

We REVERSE the trial court's order and REMAND for further proceedings.

---

[33]   *Id.* (quoting 13A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3532, at 112 (2d ed.1984)).

[34]   Although Graham apparently attempted to initiate an application for post-conviction relief, he did so after the court had granted Puget Sound's motion to compel and denied his motion for reconsideration.