**UNITED STATES of America, Appellee,**

v.

**Joseph SCLAMO, John Corio and William Carlo, Defendants-Appellants.**

Nos. 77-1375, 77-1376.

United States Court of Appeals, First Circuit.

Argued March 7, 1978.

Decided June 16, 1978.

Willie J. Davis, Boston, Mass., for defendants-appellants.

Paul E. Troy, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Defendants appeal a jury conviction on a two count indictment of conspiring to receive and receiving goods stolen from an interstate shipment valued at more than $100 in violation of 18 U.S.C. §§ 2, 371, 659. A shipment of liquor, valued at approximately $35,000, was stolen from the Conrail Trailer Yard on Franklin Street in Worcester, Massachusetts, sometime between 1:00 P.M. and 10:00 P.M. on November 22, 1976. According to a major government witness, Francis Maslowski, the stolen shipment was brought to defendant Corio's large metal garage on Route 146 in Sutton at about 8:15 P.M. on November 22, in a green and white Peterbilt tractor-trailer driven by Corio. Defendants Sclamo and Carlo accompanied the truck in Corio's blue Lincoln Continental. The three defendants and Maslowski, a twenty-one year old mechanic employed by Corio who slept in the garage upon occasion, spent about two hours unloading the liquor and placing it in a walled-off shed portion of the garage. Following the unloading, the tractor trailer was abandoned at a dirt pull-off area on Route 20 in Charlton, Massachusetts, where it was discovered by the Charlton police at approximately midnight the same evening.

On November 26, 1976, FBI Agent Ring prepared a twelve page handwritten affidavit in support of a request for a search warrant. In the affidavit, Ring detailed information regarding the Corio garage and the hijacked liquor which, he attested, had been given to him that day by a source who had proven reliable in the past and who had led directly to the recovery of two stolen trailers and one tractor, hijacked in a manner similar to the present one, during the preceding six months. Agent Ring also said that information stating that Corio and Sclamo had stolen the truck had been reported via an anonymous telephone call to another agent at the FBI office in Worcester on November 23, 1976. Agent Ring also stated that he had interviewed a witness, Robert Johnson, who had seen a tractor trailer pull out and make a U-turn on Route 146 in front of him, at the juncture of Corio's garage. Johnson had to apply his brakes and pull partly off the road to avoid hitting the truck. He reported that the truck appeared to be a White Freightliner, dirty gold or brown in color and was a cab-over tractor with a sleeper unit model. He observed Penn Central markings on the side of the trailer. The time of the incident was approximately 8:00 P.M. on November 22, 1976. There was additional specified information recited by Agent Ring in his affidavit, all tending to corroborate what he had been told by the informant and further implicating the three defendants. The search warrant was granted.

■ Defendants assign various errors which we discuss seriatim. First, they claim error on the part of the magistrate and trial judge for refusing their requests for a list of government witnesses prior to trial. Defendants claim that they were hampered in their cross-examination by lack of advance notice of government witnesses. The name of the principal government witness, Francis Maslowski, had been disclosed prior to trial, as had the affidavit prepared by FBI Agent Ring reciting the names of several potential witnesses. Jencks Act material was provided at trial. Defendants were provided with all the material required by law. Fed.R.Crim.P. 16; *United States v. Murphy,* 480 F.2d 256, 259 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973). The trial judge, exercising his discretion, ordered that the names of any unindicted coconspirators be disclosed, but refused to order further disclosure. Defendants did not articulate any compelling need for disclosure, other than the general need to prepare for cross-examination. Once having been given the name of the principal government witness, who was subjected to rigorous cross-examination, there was no further showing of need such as would compel disclosure.[1] *See Grieco v. Meachum,* 533 F.2d 713, 720 (1st Cir.), *cert. denied sub nom. Cassesso v. Meachum,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976). We find no abuse of discretion.

■ Second, defendants maintain that the trial judge erred in denying a motion to suppress based on a purportedly defective affidavit. There is no merit to this suggestion. The twelve page affidavit complies with the dictates of *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1974). The affidavit states that the informant had been proved reliable in the past; the information was of a sufficiently detailed nature so as to assure that it was based on more than mere rumor and speculation; the informant's information was corroborated by other sources. Reading the affidavit in a realistic and common sense manner, *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Cruz Pagan,* 537 F.2d 554, 556–557 (1st Cir. 1976), we find that the magistrate properly found probable cause to underpin the search warrant. The district court's refusal to suppress the seized material resulting from the search was without error.

■ Third, defendants state that the lower court should have granted the motion for a mistrial after FBI Agent Ring stated on direct examination that defendant Sclamo had said during Ring's interview with him, "I'm a check man." Defense counsel moved to strike the statement, which the court did. It is axiomatic that the prosecution cannot introduce evidence of defendant's bad character or previous criminal activity to prove defendant's propensity to commit the crime charged. *Michelson v. United States,* 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Barrett,* 539 F.2d

---

1. The United States correctly pointed out that Congress failed to adopt the House version of the proposed amendments to Rule 16, which would have made the names of witnesses discoverable by both sides. In deciding that the effective administration of criminal justice would not be served by automatic discovery of each other's witnesses, Congress excluded the names and addresses of witnesses from material automatically discoverable. H.R.Rep. No. 94–414, 94th Cong., 1st Sess. 12 (1975). *See* U.S.C.A., Title 18, Rule 16, Fed.R.Crim.P. at 361–362. At oral argument, the government attorney indicated that it was the policy of the U.S. Attorney's office to routinely oppose requests for witness lists prior to trial. While it is clear that there is no statutory obligation to provide such material, defense counsel explained that, whereas an omnibus pretrial procedure, which would provide for automatic discovery of such material, is available in Massachusetts, the government typically declines to proceed under it. We should think the government might wish to reassess its position of automatically opposing disclosure of witness lists. Furnishing such material in appropriate circumstances has been found in those districts proceeding under an omnibus pretrial discovery procedure to promote fairness and judicial efficiency. *Id.* at 359–360. *See generally* ABA Standards, Discovery and Procedure Before Trial (1974).

244, 248 (1st Cir. 1976).[2] Here, the court allowed the motion to strike and, although no specific jury instructions regarding this incident were requested by the defense, counselled the jury that it should disregard any evidence which had been stricken by the court. We cannot say that the statement above, in light of the strong case and substantial evidence produced by the government, and in view of the court's cautionary words to the jury concerning stricken testimony, was necessarily prejudicial to defendant Sclamo.[3] A motion for a mistrial is addressed to the sound discretion of the trial court and will not be reversed absent abuse of that discretion. There has been none here.

■ On the fourth claim asserted by defendants, we hold it was not error for the trial court to refuse to give a jury instruction that the conspiracy count required a specific *mens rea,* namely that defendants knew the goods to be stolen from interstate commerce. The underlying substantive statute does not require a showing of specific *mens rea;* the conspiracy count requires no greater degree of scienter than the substantive count. *See United States v. Feola,* 420 U.S. 671, 687–692, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Newson,* 531 F.2d 979, 981–982 (10th Cir. 1976); *United States v. Roselli,* 432 F.2d 879, 890–891 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). Defendants rest their argument on this issue on a line of cases from the Second Circuit which hold that a specific *mens rea* must underpin a conviction under the general federal conspiracy statute, 18 U.S.C. § 371. *United States v. Vilhotti,* 452 F.2d 1186, 1189 (2d Cir. 1971), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972); *United States v. Crimmins,* 123 F.2d 271, 273 (2d Cir. 1941). The Supreme Court sharply questioned the reasoning of these cases, concluding that the imposition of such a requirement, when the substantive crime is one involving activity proscribed irrespective of its interstate character, served no justifiable purpose and created an unnecessary "antifederal" bias. *Feola, supra,* 420 U.S. at 688–695, 95 S.Ct. 1255.

To summarize, with the exception of the infrequent situation in which reference to the knowledge of the parties to an illegal agreement is necessary to establish the existence of federal jurisdiction, we hold that where knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction of a substantive offense embodying a *mens rea* requirement, such knowledge is equally irrelevant to questions of responsibility for conspiracy to commit that offense.

*Id.* at 696, 95 S.Ct. at 1269.

■ Finally, defendants urge us to find error in the district court's refusal to grant a new trial after a government witness failed to appear and testify. The witness, Robert Johnson, was the truck driver who had informed FBI Agent Ring about the tractor trailer which had pulled out in front of him in the vicinity of defendant Corio's garage. Although he was under subpoena, Johnson did not appear. Defense counsel, when apprised of this, suggested that Agent Ring testify to the conversations he had had with Johnson. The principal point defendants raise on appeal is that Johnson's description of the truck as a White Freightliner, dirty gold or brown in color, was inconsistent with the actual trailer, a green and white Peterbilt model. This issue was adequately explored at trial. FBI Agent Ryall testified that a trucker could mistake similar models of a Peterbilt and White Freightliner truck tractor with cab-over sleeper units. Defense witness Frank Lee contested this, but conceded on cross examination that from the back or side (which was the view Johnson had of the truck as it pulled out in front of him), there was little

---

**2.** Such evidence may, of course, be admissible for other purposes, such as impeachment or to show proof of motive, opportunity, etc. *See* Fed.R.Evid. 404(b), 609(a).

**3.** The government argues that the statement was made to persuade Agent Ring that hijacking was not the type of crime Sclamo engaged in and, hence, had a possibly exculpatory import.

difference. Since it was 8:00 P.M. on a November evening, it would have been sufficiently dark to explain discrepancies in description. Witness Johnson had accurately described the markings on the side of the truck, which comported precisely with the stolen vehicle. There is nothing to suggest, nor do defendants so assert, that witness Johnson would have materially changed his story. Defense counsel did not move for a continuance when apprised of Johnson's unavailability. It was defense counsel who suggested that Johnson's testimony be entered via Agent Ring. Defendants will be held to their tactical judgment. *Willens v. University of Massachusetts,* 570 F.2d 403, 406 (1st Cir. 1978).

*The judgments are affirmed.*