**UNITED STATES of America, Plaintiff,**

v.

**Jose E. PANZARDI–ALVAREZ, a/k/a "Polo"; Gloria Nieves-Baez; Hector Arnaldo Reyes-Andujar; Nestor Manuel Cancel-Hernandez, a/k/a "Papo Cancel"; Angel Alberto Rosario-Hernandez, a/k/a "Gelo"; Jose D. Del Valle-Soledad, a/k/a "Cheo"; and Arnaldo Hernandez-Hernandez, Defendants.**

Crim. No. 85–493 (JAF).

United States District Court,
D. Puerto Rico.

Feb. 24, 1986.

H. Manuel Hernández, Asst. U.S. Atty., San Juan, P.R., for plaintiff.

Joseph Laws, Asst. Public Defender, Peter John Porrata; Fernando J. Carlo Gorbea, Wilfredo Figueroa Vélez; Efraín Irizarry Colón; Joacquín Monserrate, Edwin Quiñones, José A. Fuentes Agostini, Carlos R. Noriega, San Juan, P.R., for defendants.

## ORDER

FUSTE, District Judge.

On November 27, 1985, codefendants were indicted on charges of conspiracy to deprive Avelino Cabrera Díaz, a U.S. citizen, of his right and privilege to be a witness for the Government in *United States v. Panzardi, et al.*, Criminal No. 85–116 (CC), in violation of 18 U.S.C. § 241, and for having aided and abetted each other in causing the *death* of said witness, in violation of 18 U.S.C. §§ 1513, 2.[1]

### I.

The codefendants identified in footnote 2 of this Order seek pretrial disclosure by the Government of a list of its prospective witnesses.[2] Their argument is that disclosure is required to ensure due process of law under the fifth amendment and effective assistance of counsel under the sixth amendment. As there is no "general constitutional right" to discovery in a criminal case, *Weatherford v. Bursey*, 429 U.S. 545, 559–60, 97 S.Ct. 837, 845–46, 51 L.Ed.2d 30 (1977), these arguments lack merit.

The moving codefendants allege that if 18 U.S.C. § 3432 mandates the disclosure of witnesses' identities in a capital case, then it follows that in this case equal protection principles also mandate such discovery. The codefendants are placing this case, a violation of civil rights resulting in death, 18 U.S.C. §§ 241, 924(c), 1513, and 2, on the same standing as a capital case. Such is not the holding in *Bursey*. The equal protection clause is not triggered absent a showing of a fundamental right or a suspect classification. We have neither in this case.

This Court also declines codefendants' invitation to extend the witness list guarantee in capital cases to all criminal prosecutions. Congressional attempts to amend Fed.R.Crim.P. 16 to compel disclosure of names and addresses of prospective witnesses have failed in the past. The courts are not to indulge in legislation. *See United States v. Sclamo*, 578 F.2d 888, n. 1 890 (1st Cir.1978). Neither the Jencks Act, 18 U.S.C. § 3500, nor Fed.R.Crim.P. 16, compel or permit pretrial disclosure of a witness list. *See United States v. Boria*, 371 F.Supp. 1068, 1069 (D.P.R.1973). This matter boils down to court's discretion. On a case-by-case basis, judges will exercise their discretion in determining whether the Government's interest in preventing any intimidation or injury to its witnesses outweighs codefendants' "compelling need", if any, for this information. *See United States v. Sclamo*, 578 F.2d at 890; *see also* 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.3 at 491–94 (1984). This is not the case here. Codefendants have failed to show any "compelling need" for a witness list. The alleged usefulness of this list to prepare for effective cross-examination at

---

**1.** A superseding indictment has been filed incorporating a third count against three codefendants. The superseding indictment charges a violation to 18 U.S.C. § 924(c), inasmuch as the Government contends that a firearm was used in the commission of the crime.

**2.** The motions treated in this order on the subjects of witness lists and witness interviews are the following: Docket document Nos. 50 (filed Dec. 20, 1985) (Panzardi-Alvarez); 55 (filed Dec. 20, 1985) (Reyes-Andújar); 77 (filed Jan. 9, 1986) (Cancel-Hernández); 89 (filed Jan. 13, 1986) (Hernández-Hernández); 98 (filed Jan. 15, 1986) (Nieves-Báez).

trial is alone insufficient to warrant disclosure. *United States v. Sclamo*, 578 F.2d at 890. In this case, the risk that disclosure may compromise the safety of the Government's witnesses is untolerably high. *See United States v. Harris*, 542 F.2d 1283, 1298 (7th Cir.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977).

Codefendants argue that, in any event, they are entitled to interview the Government witnesses and any cooperating codefendants before trial. This position is novel indeed. If we have found, in the exercise of discretion, that defendants are not entitled to the list of witnesses, they obviously are not entitled to interview them. The right to confrontation and examination materializes at the time trial commences. Given the seriousness of the accusations object of the indictment and superseding indictment, defendants' motions are hereby DENIED.

## II.

Fed.R.Crim.P. 16 regulates disclosure by the Government of (1) written or recorded statements by the defendant and within the Government's possession, custody or control; (2) oral statements by the defendant before or after arrest that the Government intends to use at trial; (3) the defendant's prior criminal record; (4) documents or tangible objects within the Government's possession, custody or control; (5) reports of scientific tests and medical examinations.

The Court has been advised, through Government letters dated December 11, 1985 and February 9, 1986, copies of which form part of the Government's Consolidated Response (filed Feb. 7, 1986), that it has provided each codefendant with an informal discovery package in compliance with Rule 16. On February 19, 1986, the Government filed an Informative Motion, docket document No. 142A, stating that letters dated February 9, 1986 were sent two days later, on February 11, 1986, and that an additional discovery package was provided on February 19, 1986. The Government is well aware of its continuing obligation throughout the criminal prosecution to disclose Rule 16 material. Codefendants' motions requesting Rule 16 information are NOTED.[3] To the extent that said motions exceed the scope of Rule 16 for seeking disclosure of statements made by coconspirators, Government witnesses, or statements otherwise prohibited under Fed.R.Crim.P. 16(a)(2), they are DENIED.

Motions filed under Fed.R.Crim.P. 12(d)(2) [4] are NOTED as the Government has informed codefendants "that, with the exception of the material taken from [co]defendant Cancel's house during a consent search all the evidence produced during informal discovery will be used by the Government at trial." Government's Consolidated Response at 33.

Codefendants have also filed general requests for the production of any evidence favorable to them.[5] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), holds that the prosecutor has an obligation to disclose evidence favorable to an accused that is material either to guilt or to punishment. This rule is one of fairness and not of discovery.

**3.** Docket document Nos. 52 (filed Dec. 20, 1985) (Panzardi-Alvarez); 59 (filed Dec. 20, 1985) (Reyes-Andújar); 78 (filed Jan. 9, 1986) (Cancel-Hernández); 85 (filed Jan. 13, 1986) (Hernández-Hernández); 90 (filed Jan. 13, 1986) (Hernández-Hernández); 104 (filed Jan. 15, 1986 (Nieves-Báez).

**4.** Docket document Nos. 54 (filed Dec. 20, 1985) (Reyes-Andújar); 79 (filed Jan. 9, 1986) (Cancel-Hernández); 90b (filed Jan. 13, 1986) (Hernández-Hernández); 107 (filed Jan. 15, 1986) (Nieves-Báez); 132 (filed Jan. 30, 1986) (Hernández-Hernández).

**5.** Docket document Nos. 47 (filed Dec. 20, 1985) (Panzardi-Alvarez); 55 (filed Dec. 20, 1985) (Reyes-Andújar); 80 (filed Jan. 9, 1986) (Cancel-Hernández); 83 (filed Jan. 9, 1986) (Cancel-Hernández); 86 (filed Jan. 13, 1986) (Hernández-Hernández); 88 (filed Jan. 13, 1986) (Hernández-Hernández); 102 (filed Jan. 15, 1986) (Nieves-Báez); 104 (filed Jan. 15, 1986) (Nieves-Báez); 111 (filed Jan. 15, 1986) (Nieves-Báez); 131 (filed Jan. 30, 1986) (Hernández-Hernández).

See J. Cissell, *Federal Criminal Trials* § 7–6 at 244 (1983). *Brady* material includes:

the government's promises of leniency and remunerative arrangements made to procure testimony from its witnesses, evidence tending to show perjury by a government witness, evidence impeaching the credibility of a government witness, evidence corroborating the defendant's testimony, and third-party confessions to the crime with which the defendant was charged.

*Project: Criminal Procedure*, 73 Geo.L.J. 403, 487–88 (1984).

We note the Government's assertion that whatever exculpatory materials have been uncovered so far, all have been provided to codefendants. *See* Government's Consolidated Response at 20. Codefendants' motions are vague, non-specific requests and can only be NOTED and otherwise DENIED if inconsistent with this Order.

■ The Government also concedes its *Brady* obligation as expanded in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), to provide codefendants with any information useful for impeachment purposes. We agree with the Government that due process would not be offended by allowing their production on March 7, 1986 at 9:00 A.M., three days before trial. *See, e.g., United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir.1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984); *United States v. Allain*, 671 F.2d 248, 254–55 (7th Cir.1982).

### III.

■ We expand our footnote order of January 2, 1986, which denied codefendant Reyes-Andújar's motion for pre-Jencks material.[6] It is settled that the Jencks Act, 18 U.S.C. § 3500, prohibits federal courts

from compelling the early disclosure by the Government of statements made by its witnesses. *United States v. Algie*, 667 F.2d 569, 571–72 (6th Cir.1982). The early disclosure of Jencks material is solely for the Government to decide. *Id.* at 571–72. Here, the Government has chosen to disclose any Jencks material "[o]n the day the jury is selected and sworn, thus affording defendants ample time to review the material and avoiding any unnecessary delay of the trial", but not earlier. *See* Government's Consolidated Response at 18–19. Defendants' motions are DENIED.

### *The Issue of Rough Notes*

The Jencks Act, 18 U.S.C. § 3500, requires production of any statements by Government witnesses "in the possession of the United States" once the witnesses have testified on direct examination at trial. Upon a defendant's motion, the court must order production of any such "statement", as defined in § 3500(e), that relates to the witness' direct testimony. *See generally Project: Criminal Procedure*, 73 Geo.L.J. 403, 496–501 (1984). The issue is whether rough interview notes by Government agents are Jencks Act statements and, if so, whether they have to be preserved for future disclosure. The Fourth Circuit, in *United States v. Hinton*, 719 F.2d 711, 722 (4th Cir.1983), *cert. denied*, 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 699 (1984), adopted the majority rule against preservation or disclosure, and explained:

[t]he investigative notes of a government agent, made in the course of interviewing witnesses, which are later incorporated in the agent's formal 302 report, are not statements within the meaning of Section 3500(e)(1).

Albeit in ambiguous terms, the First Circuit appears to reject a *per se* rule of suppression in a case where the Govern-

---

**6.** This ruling applies to all motions pending before the Court on the subject of early disclosure of Jencks Act material, to wit: Docket document Nos. 82 (filed Jan. 9, 1986) (Cancel-Hernández); 89 (filed Jan. 13, 1986) (Hernán-

dez-Hernández); 106 (filed Jan. 15, 1986) (Nieves-Báez). *See also* footnote order, docket document No. 61 (filed Dec. 20, 1985) (Reyes-Andújar).

ment destroys rough notes that are later incorporated in formal reports. *United States v. Lieberman*, 608 F.2d 889, 896 n. 13 (1st Cir.1979), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980); *United States v. Drougas*, 748 F.2d 8, 30 (1st Cir.1984).

We need not decide the question whether the Government has an obligation to preserve its rough notes. That question is moot here as the Government has agreed to retain "[r]ough notes of FBI agents' interviews with Government witnesses...." *See* Government's Consolidated Response, docket document No. 136, at 32. Therefore, defendants' motions are DENIED AS MOOT.[7]

■ Further, defendants seek to preserve the rough notes of Puerto Rico law enforcement officers without distinguishing whether said officers acted in a joint state-federal investigation or independently. No authority has been cited by defendants supporting the preservation of rough notes in either case. Said motions are DENIED insofar as they seek to preserve rough interview notes that are not "[i]n the possession of the United States." 18 U.S.C. § 3500(b).

### IV.

Codefendants Reyes-Andújar and Nieves-Báez concede, in docket document Nos. 58 (filed Dec. 20, 1985) and 100 (filed Jan. 15, 1986), that Fed.R.Evid. 404(b) does not compel the Government to disclose its intention to use at trial any "[e]vidence of other crimes, wrongs or acts." As the Government has voluntarily agreed to give notice of its intention, *see* Government's Consolidated Response at 27–31, said motions are DENIED for mootness.

### V.

It rests within our discretion whether to permit, as requested in docket document No. 130 (filed Jan. 30, 1986), counsel for codefendant Hernández-Hernández, to conduct the *voir dire* examination of prospective jurors. We hold that *voir dire* in this case will be conducted by the Court. *See* Fed.R.Crim.P. 24(a); *see generally* C. Wright, *Federal Practice and Procedure: Criminal* 2d § 381 at 332–35 (1982). This procedure will assure the selection of qualified and impartial jurors and will contribute to the efficient administration of justice. Any danger that adverse pretrial publicity may have on the jury can be prophylactically eliminated by this Court's examination of:

> each prospective juror apart from other jurors [ ...] with a view to eliciting the kind and degree of his exposure to the case or the parties, the effect of such exposure on his present state of mind, and the extent to which such state of mind is immutable or subject to change from evidence.

*United States v. Maldonado Medina*, 761 F.2d 12, 20 (1st Cir.1985), quoting *Patriarca v. United States*, 402 F.2d 314, 318 (1st Cir.1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 131 (1969). Codefendant's motion is DENIED.

### VI.

■ Pending before us is a motion to dismiss indictment, docket document No. 119, filed by codefendant del Valle-Soledad. After a careful analysis of the motion and opposition thereto, we decide that said motion should be DENIED.

Presumably under Fed.R.Crim.P. 12(b)(2), codefendant del Valle-Soledad filed on January 16, 1986 a motion to dismiss the indictment returned by a Grand Jury on November 27, 1985. Codefendant's motion was untimely filed as the timetable for all pretrial motions had expired on January 15, 1986. In the interest of justice, this Court exercises its discretion in considering del Valle-Soledad's motion.

---

7. Motions to Produce Rough Notes, docket document Nos. 48 (filed Dec. 20, 1985) (Panzardi-Alvarez); 56 (filed Dec. 20, 1985) (Reyes-Andújar); 81 (filed Jan. 19, 1986) (Cancel-Hernández); 103 (filed Jan. 15, 1986) (Nieves-Báez); 128 (filed Jan. 30, 1986) (Hernández-Hernández).

We are able to perceive from the motion only what codefendant is *not* contesting. No claim has been raised of vindictive prosecutorial misconduct, or unnecessary delay in presenting charges to the Grand Jury, or that the Government presented insufficient, incompetent, hearsay or illegally-obtained evidence. Rather, del Valle-Soledad contends that evidence developed during the detention hearings in this case cannot demonstrate his culpability to the offenses charged, and, therefore, the indictment must be dismissed. This argument is premature. If codefendant's challenge is to the sufficiency of the evidence, a Fed.R. Crim.P. 29 motion is the appropriate vehicle. Even assuming, *arguendo*, that codefendant is questioning the legal sufficiency of the indictment, the motion to dismiss is DENIED for the following reasons.

The sixth amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." The constitutional requirement of notice is embodied in Fed.R.Crim.P. 7(c)(1), which provides that "an indictment ... shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *See* C. Wright, *Federal Practice and Procedure: Criminal* 2d § 125 at 363–88 (1982). An indictment is legally sufficient if it "(1) contains the elements of the offense charged and fairly informs the defendant of the charge against him which he must defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Sedlak*, 720 F.2d 715, 719 (1st Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984), *citing, Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

The indictment which is the object of codefendant's motion reads as follows:

## COUNT ONE
## THE GRAND JURY CHARGES:

That from a date unknown to the Grand Jury, and continuing up to on or about November 9, 1985, at Barceloneta, Puerto Rico, and within the jurisdiction of this Court,

JOSE E. PANZARDI–ALVAREZ also known as "POLO"

GLORIA NIEVES–BAEZ

HECTOR ARNALDO REYES–ANDUJAR

NESTOR MANUEL CANCEL-HERNANDEZ also known as "PAPO CANCEL"

SEALED [8]

ANGEL ALBERTO ROSARIO–HERNANDEZ also known as "GELO"

JOSE D. DEL VALLE–SOLEDAD also known as "CHEO"

the defendants herein, did knowingly and willfully combine, conspire, confederate, and agree together with each other and with other persons known and unknown to the Grand Jury, to injure, oppress, threaten, and intimidate, Avelino Cabrera Díaz, a citizen of the United States, in the free exercise and enjoyment of the right and privilege secured to him by the Constitution and laws of the United States, to wit, the right and privilege to provide information relating to the commission of federal offenses, and to be a witness in a federal judicial proceeding in the United States District Court, for the District of Puerto Rico, in the trial of *United States v. José E. Panzardi-Alvarez, also known as "Polo", et al.*, Criminal No. 85–116(CC), which was scheduled to begin on November 12, 1985, which deprivation resulted in the death of Avelino Cabrera Díaz. All in violation of Title 18, United States Code, § 241.

## COUNT TWO

The Grand Jury further charges:

That on or about November 9, 1985 at Barceloneta, Puerto Rico, and within the jurisdiction of this Court,

---

8. On December 9, 1985, the Government requested that the indictment be unsealed to reveal Arnaldo Hernández-Hernández as an additional codefendant.

JOSE E. PANZARDI–ALVAREZ also known as "POLO"

GLORIA NIEVES–BAEZ

HECTOR ARNALDO REYES–ANDU-JAR

NESTOR MANUEL CANCEL–HER-NANDEZ also known as "PAPO CAN-CEL"

SEALED

ANGEL ALBERTO ROSARIO–HER-NANDEZ also known as "GELO"

JOSE D. DEL VALLE–SOLEDAD also known as "CHEO"

the defendants herein, aiding and abetting each other, did knowingly and willfully engage in conduct that caused bodily injury, to wit, death, to Avelino Cabrera Díaz, said death of Avelino Cabrera Díaz having been caused by the defendants herein, with the intent to retaliate against Avelino Cabrera Díaz for having provided information regarding the commission of federal offenses to the Drug Enforcement Administration, as well as for testifying before the Federal Grand Jury regarding the commission of said federal offenses, and for his willingness to testify as a witness for the Government on or about November 12, 1985, in the case of *United States v. José E. Panzardi-Alvarez, et al.,* Criminal No. 85–116 (CC), all in violation of Title 18, United States Code, Sections 1513 and 2.

Count One of the indictment lists Avelino Cabrera Díaz as the victim and Panzardi-Alvarez, Nieves-Báez, Reyes-Andújar, Cancel-Hernández, Rosario-Hernández, del Valle-Soledad, and an unnamed party, as coconspirators. As to the then sealed coconspirator, it is apparent that an indictment need not contain the names of every coconspirator, but is legally sufficient simply to raise the existence of a conspiracy. *United States v. Piccolo,* 723 F.2d 1234, 1239 (6th Cir.1983), *cert. denied,* 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 817 (1984). Count One also describes "[f]rom a date unknown ... and continuing up to on or about November 9, 1985 at Barceloneta, Puerto Rico ..." as the general time frame in which the conspiracy was consummated.

Further, Count One tracks almost literally the elements of the offense charged, namely, a violation of 18 U.S.C. § 241. *See United States v. Fusaro,* 708 F.2d 17, 23 (1st Cir.), *cert. denied,* 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). The theory of criminality, i.e., that del Valle-Soledad was a member of a conspiracy and knowingly contributed to its support, can be perceived by codefendant upon a reading of the indictment. Thus, we conclude that Count One is sufficiently definite and particular to apprise codefendant of the charges against him, and be used as a bar to any subsequent prosecution for the same offense. *United States v. Sedlak,* 720 F.2d at 719. This holding is coextensive to Count Two of the indictment. Said count also names the coconspirators, the victim, and gives a general description of the situs of the alleged conspiracy. Count Two also follows the statutory language of the offenses charged, to wit: a violation of 18 U.S.C. §§ 1513, 2.

A superseding indictment has been filed as of February 12, 1986 charging a violation of 18 U.S.C. § 924(c) and 2. The conspiracy charge of 18 U.S.C. §§ 1513 and 2 is also embodied in the superseding indictment, Count Three, which is, properly-speaking, the superseding material. Said filing does not affect our ruling. The superseding indictment, Count Three, does not reach del Valle-Soledad as codefendant. He has no standing to attack the sufficiency of the same.

We conclude that the indictment fulfills the constitutional requirements set forth in *United States v. Sedlak,* 720 F.2d at 719. Codefendant's motion is hereby DENIED.

## VII.

Codefendants Hernández-Hernández and Cancel-Hernández seek relief under Fed.R. Crim.P. 14 for prejudice that allegedly could result from their upcoming joint trial on March 10, 1986. *See* docket document Nos. 74 (filed Jan. 9, 1986); 133 (filed Jan. 30, 1986). The main argument is that a joint trial with convicted felon Panzardi-Alvarez would be unfair to them because of

adverse publicity that Panzardi-Alvarez has received in the local press. The rest of the arguments are either premature, conclusory or purely speculative to deserve any elaborate discussion.

 We first hold that joinder of all seven codefendants in a single trial is proper under Fed.R.Crim.P. 8(b). The conspiracy count of the indictment tips the balance in favor of joinder. *United States v. Arruda*, 715 F.2d 671, 677–81 (1st Cir.1983). Rule 14, however, permits severance despite the propriety of the original joinder. *United States v. Davis*, 623 F.2d 188, 194 (1st Cir.1980). Severance is discretionary for the trial court and will not be granted unless codefendants make a strong showing of prejudice. *See, e.g., United States v. Arruda*, 715 F.2d at 679. We are persuaded by the Government not to deviate from the general rule that jointly-indicted defendants should be jointly tried. *See United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir.1983), *cert. denied*, 465 U.S. 1108, 80 L.Ed.2d 143, 104 S.Ct. 1614 (1984). The benefits to the Government of a joint trial are obvious. The danger of prejudice to these codefendants is purely speculative. Arguments raising the dangerous "spill over" effects of joint trials, guilt by association, and antagonistic defenses have all been rejected as insufficient to render a denial of severance an abuse of discretion. *United States v. Arruda*, 715 F.2d at 679–80; *United States v. Barbosa*, 666 F.2d 704, 708 (1st Cir.1981); *United States v. Davis*, 623 F.2d at 194–95; *see generally* C. Wright, *Federal Practice and Procedure: Criminal* 2d § 223 at 794–99 (1982). Both Hernández-Hernández and Cancel-Hernández also contend that other codefendants "might" testify on their behalf if they were tried separately. This lacks any merit. For this argument to have merit, there must be a bona fide need for the testimony, the substance of the testimony has to be demonstrated, the exculpatory nature and effect of the testimony must surface, and the codefendant must assure that they will testify. These elements are not present here. *See United States v. Drougas*, 748 F.2d 8, 19 (1st Cir.1984). Finally, their allegation of adverse pretrial publicity is also insufficient to warrant a severance. *See United States v. Barbosa*, 666 F.2d at 708.

Codefendants can take solace in this Court's power to sever at a later stage of the prosecution if there appears to be a strong showing of prejudice. As codefendants have not made the requisite showing, their motions are DENIED. *See* C. Wright, *Federal Practice and Procedure: Criminal* 2d § 221 at 773–74.

## VIII.

Codefendants Reyes-Andújar, Nieves-Báez, and Hernández-Hernández seek a pretrial evidentiary hearing on the admissibility of potential out-of-court statements by coconspirators.[9] Nieves-Báez alternatively requests an *in limine* admissibility determination. While neither option is foreclosed under Fed.R.Evid. 104 and Fed.R.Crim.P. 12, seen in light of 18 U.S.C. § 3731, we decide that said motions are to be DENIED.

 To summarize, the subject of coconspirator declarations raises three distinct questions: (1) What standard controls? (2) who is responsible for the determination? (3) at what stage of the criminal prosecution should the admissibility determination be made? As to the first, "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is admissible hearsay. Fed.R. Evid. 801(d)(2)(E). The admissibility of such statement is governed by the preponderance of the evidence standard applicable in civil cases. Thus, if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and the statement was made in furtherance of the conspiracy, the statement is admissible. *United States v. Petrozziello*, 548 F.2d 20,

---

**9.** Docket document Nos. 60 (filed Dec. 20, 1985) (Reyes-Andújar); 109 (filed Jan. 15, 1986) (Nieves-Báez); 129 (filed Jan. 30, 1986) (Hernández-Hernández).

23 (1st Cir.1977). Any statement made after the objectives of the conspiracy have failed or have been achieved is inadmissible. Advisory Committee Notes (1975); *see generally McCormick on Evidence* Ch. 26 § 267 at 792–95 (1984).

■ As to the second question, *Petrozziello* holds that the trial judge, pursuant to Fed.R.Evid. 104, must make the admissibility determination and not the jury. The timing for such determination, an issue left open in *Petrozziello*, was treated by *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980), which held:

> If the prosecution attempts to introduce into evidence an out-of-court declaration under Fed.R.Evid. 801(d)(2)(E), the trial court, upon proper objection, may conditionally admit the declaration. If the declaration is conditionally admitted, the court should inform the parties on the record out of the hearing of the jury that (a) the prosecution will be required to prove by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant were members of it at the time that the declaration was made, and that the declaration was in furtherance of the conspiracy, (b) that at the close of all the evidence the court will make a final *Petrozziello* determination for the record, out of the hearing of the jury; and, (c) that if the determination is against admitting the declaration, the court will give a cautionary instruction to the jury, or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any prejudice.

628 F.2d at 638 (footnote omitted).

We conclude that alternative procedures such as an *in limine* determination or a pretrial evidentiary hearing would unnecessarily lengthen these proceedings. Not only is a pretrial hearing duplicative, but evidentiary *Petrozziello* issues are "grist

for the mill of district judges and, except in rare instances, can be handled competently in the trial context." *United States v. Maldonado Medina*, 761 F.2d 12, 17 (1st Cir.1985). No "rare instances" are present requiring us to deviate from the *Ciampaglia* procedures.

■ Notwithstanding *Ciampaglia*, presentation of evidence which by its nature requires the layout of foundation testimony should always be treated under the most conservative approach. We suggest to counsel that, in appearances before the undersigned, matters requiring foundation testimony for their eventual admissibility should be presented to the court after the foundation testimony has been received unless trial strategy or matters pertaining to the orderly presentation of witnesses direct otherwise. In the context of a *Petrozziello* situation, the court could be advised at a given time that the *Petrozziello* issue is about to be presented. This can be done in technical terms which only the judge and counsel will understand. Ideally, evidence that a conspiracy existed, that the declarant and the defendant were members of the conspiracy at the time the declaration was made, and that the declaration was in furtherance of the conspiracy, should precede the actual conconspirator's statement. This will save parties and courts valuable time in those cases where for one reason or another the foundation testimony does not establish the requirements of admissibility. It is obvious that giving cautionary instructions and/or declaring mistrials in these situations does not serve anybody's interests. Codefendants' motions are DENIED.

### IX.

Codefendants Cancel-Hernández and Reyes-Andújar have moved to suppress their alleged incriminating statements on fifth, sixth, and fourteenth-amendment grounds.[10] Cancel-Hernández claims that *allegedly* he made incriminating state-

---

10. The motions treated in this order on the subject of suppression are the following: Docket document Nos. 76 (filed Jan. 9, 1986) (Cancel-Hernández); 96 (filed Jan. 15, 1986) (Reyes-Andújar); and the Government's Consolidated Response, docket document No. 136 (filed Feb. 7, 1986) at 31–32.

ments to Government agents before being arrested, without being informed of his constitutional rights to silence and counsel. He further claims that it is *possible* that written statements were obtained. Cancel-Hernández gives no assurance. He relies on "allegedly" and "possible". On the other hand, Reyes-Andújar claims giving a statement, reduced to writing, without being warned after the arrest.

We have examined the Government's notices of discovery to counsel for both codefendants. It appears that Reyes-Andújar was furnished with a copy of his statement. Cancel-Hernández was not. Obviously, if we are faced with statements in the nature of confessions, and since the constitutional violation has been raised, the codefendants would be technically entitled to a suppression hearing under *Sims v. Georgia,* 385 U.S. 538, 543–44, 87 S.Ct. 639, 642–43, 17 L.Ed.2d 593 (1967) and *Jackson v. Denno,* 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964). The need of a hearing is moot if the Government does not plan to utilize the statements as evidence in the trial. Even if the Government intends to make use of the statements at trial, since we are faced with multiple defendants, *Bruton* problems may be present. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The Government should evaluate whether these statements are vitally important to the Government's case. If they are not vital, the matter may be totally moot and no suppression hearing would be needed. If the statements are vital to the Government's case, and assuming that the fifth, sixth, and fourteenth-amendment objections could be disposed of against defendants, then the potential *Bruton* problem would come into play.

Cancel-Hernández, Reyes-Andújar, and the Government will expand on this issue and inform the Court of their position within ten (10) days. In the event that the suppression hearing is needed, said evidentiary hearing shall be held March 6, 1986, at 10:30 A.M. A *Jackson* hearing is not designed to facilitate unauthorized dis-

covery. Rather, it is a procedure for determining solely whether defendants' constitutional rights were infringed. The hearing would be limited to the circumstances in which the statements were given and nothing more. The specific requests for immediate suppression are DENIED as premature.

IT IS SO ORDERED.