July 12, 1993 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 
No. 92-2367

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JOSE ALGARIN-ROSA,

 Defendant, Appellant.

 
No. 93-1006

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 EDUARDO GONZALEZ-RODRIGUEZ,

 Defendant, Appellant.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Raymond L. Acosta, U.S. District Judge]
 

 

 Before

 Torruella, Oakes* and Cyr,

 Circuit Judges.
 

 

 
*Of the Second Circuit, sitting by designation.

 Jos C. Romo Matienzo for appellant Gonzalez-Rodriguez.
 
 Carlos Vazquez-Alvarez for appellant Algarin-Rosa.
 
 Esther Castro Schmidt, Assistant United States Attorney, with
 
whom Daniel F. Lopez Romo, United States Attorney, and Jos A. Quiles-
 

Espinosa, Senior Litigation Counsel, were on brief for appellee.
 

 

 

 Cyr, Circuit Judge. Appellants challenge their convictions,
 Cyr, Circuit Judge. 
 

under 21 U.S.C. 841(a)(1), for aiding and abetting the distribution

of 997.3 grams of cocaine. We affirm.

 I

 BACKGROUND
 

 We review the evidence in the light most favorable to the

prosecution with a view to whether a rational jury could have found

the defendants guilty beyond a reasonable doubt. United States v.
 

Cruz, 981 F.2d 613, 615 (1st Cir. 1992); United States v. Tejeda, 974
 

F.2d 210, 212 (1st Cir. 1992); United States v. Ortiz, 966 F.2d 707,
 

711 (1st Cir. 1992), cert. denied, 113 S. Ct. 1005 (1993). Around
 

April 6, 1992, a confidential informant received a tip that cocaine

could be purchased at "Los Companeros," an auto body repair shop

operated by two brothers, Eduardo Gonzalez Rodriguez ("Eduardo") and

Luis Gonzalez ("Luis"). The informant went to the shop, accompanied

by one Harry Burgos, and there encountered Jose Algarin Rosa ("Al-

garin"), apparently an employee. The informant asked Algarin about

the possibility of purchasing a half kilogram of cocaine. Algarin

told the informant that in order to purchase this amount, the infor-

mant would need to talk to Luis.

 As the informant was leaving the shop, Luis arrived, accom-

panied by Eduardo. Algarin made introductions. With Algarin and

 3

Eduardo present, the informant again asked to purchase a half kilogram

of cocaine. Luis consulted with Eduardo and offered to sell one-

eighth of a kilogram of cocaine for $3000; the informant declined the

offer. Luis then indicated that a large shipment was due from Vieq-

ues, Puerto Rico, and that when the shipment arrived he could sell the

informant a full kilogram for $16,000. The informant tentatively

assented.

 On April 13, 1992, the informant met again with Luis, who

stated that he had received the shipment from Vieques and was ready to

complete the kilogram deal. The informant gave Luis his beeper number

and left, ostensibly to get the purchase money. Around 3:00 p.m., the

informant returned to the repair shop, accompanied by Ruben Diaz Padro

("Diaz"), a federal undercover agent. Luis and Algarin were both

present. Before the transaction could be consummated, however,

Eduardo entered and warned Luis that there were police nearby. Luis

thereupon arranged to meet the informant on a nearby road. Accompa-

nied by Diaz, the informant drove to the site of the proposed rendez-

vous, and parked as instructed. A few minutes later, the informant

and Diaz observed Eduardo drive by in a wine-colored BMW automobile.

After several passes, Eduardo pulled over and parked in front of the

informant's automobile. Luis pulled in behind. Using hand signals,

Luis attempted to lead the informant to a third site, with Eduardo

following in his own car. Because the informant was uncomfortable

with this change in plans, he declined to follow, and drove away.

 4

 Later that afternoon, Luis called the informant's beeper

number and agreed to complete their kilogram transaction at the repair

shop. Eduardo greeted the informant on arrival and instructed him not

to park in front of the shop. As the informant and Diaz made their

way into the office, Algarin reassured the informant of Luis's hones-

ty: "Do not be afraid, they do not deal with tricks." Eduardo, who

was leaving the office as the informant met with Luis, advised Luis on

how to remove the cocaine from its bag: "That is not the way that it

is done. Don't take it out like that." Shortly thereafter, at the

informant's signal, federal agents raided the repair shop. Luis was

arrested in the office. Algarin attempted to run away, but was

arrested after a scuffle with DEA agents at the shop gate. Eduardo

was arrested on the street nearby. All were indicted for aiding and

abetting the distribution of cocaine.

 The defendants were joined for trial, over Eduardo's objec-

tion. On May 4, 1992, the defense filed an omnibus discovery motion,

seeking, inter alia, "all information which may be used for impeach-
 

ment of government witnesses." The government disclosed that an

administrative fine had been imposed on the informant for marijuana

possession in New York. The government disclaimed knowledge of any

other impeachment material relating to the informant.

 Ultimately, Luis entered a guilty plea; Eduardo and Algarin

went to trial. In an effort to discredit the informant's testimony,

the defense called Esteban Garcia Rosario ("Garcia"), a former ac-

quaintance of the informant, who testified that the informant had used

 5

and dealt drugs in the past. To rebut Garcia's testimony, the prose-

cution recalled the informant. The informant admitted knowing Garcia

and, later, on cross-examination, admitted that he had once purchased

drugs from Garcia "for a friend." Both defendants asserted that the

government should have disclosed this information prior to trial,

relying on Brady v. Maryland, 373 U.S. 83 (1963), and moved for
 

judgments of acquittal under Fed. R. Crim. P. 29. The court denied

their motion.

 In the course of his redirect examination by the government,

the informant was asked whether he "had any personal knowledge if

[Garcia] was acquainted with Eduardo Gonzalez or Luis Gonzalez and

Algarin." The informant responded in Spanish: "as to Algarin I don't

know, but I do know that he [Garcia] bought one eighth [kilogram] of

cocaine from . . . Eduardo Gonzalez." Before the answer could be

translated into English, both defendants moved for mistrial, invoking

the rule on "other acts" evidence. See Fed. R. Evid. 404(b). Reserv-
 

ing its ruling on the mistrial motion, the district court gave the

government an opportunity to show that the informant's statement was

based on personal knowledge of Garcia's prior drug sources under

Evidence Rule 602. Eventually, the informant was permitted to testi-

fy: "I used to visit him [Garcia] at his house and I know that he was

buying from Luis and Eduardo." A few hours later, as part of its jury

charge, the court delivered a curative instruction proposed by defen-

dants:

 6

 "I instruct you, ladies and gentlemen of the jury,
 that the defendants are on trial solely and exclu-
 sively on the charge set forth in the indictment
 and nothing else. So therefore I instruct you
 that you should disregard, that is, get out of
 your mind completely, [the informant's] testimony
 concerning [Garcia's] prior dealings with the
 defendant. It has nothing to do with this case
 and it is irrelevant and you should not consider
 it at all for any purpose whatsoever in your de-
 liberation . . . ."

Algarin and Eduardo were both convicted.

 II

 DISCUSSION
 

 Appellants' first contention is that the district court

erred in denying their motion for mistrial based on the informant's

testimony that Garcia had purchased "one eighth [kilogram] of cocaine

from . . . Eduardo Gonzalez." Assuming, for present purposes, that

the informant's statement was inadmissible against appellants,1 we

review for "abuse of discretion" the district court's election to give

a cautionary instruction, rather than declare a mistrial, to counter-

act any prejudicial effect which may have resulted from the challenged

testimony. See, e.g., United States v. Bello-Perez, 977 F.2d 664, 672
 

(1st Cir. 1992); United States v. Sclamo, 578 F.2d 888, 890-91 (1st
 

Cir. 1978).

 

 1Rule 404(b) provides that "[e]vidence of other crimes, wrongs,
or acts is not admissible to prove the character of a person in order
to show action in conformity therewith. It may, however, be admissible
for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or
accident." Fed. R. Evid. 404(b).

 7

 There was no abuse of discretion. Even assuming, for

purposes of discussion, that some improper prejudice may have resulted

from the informant's testimony, the degree of any such prejudice,
 

assessed from the vantage point of a "cold appellate record," see
 

Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988), was
 

plainly insufficient to warrant second-guessing the trial court's

judgment that its jury instruction was adequate cure for any possible

unfair prejudice. Moreover, although appellants now fault the dis-

trict court's failure to give a contemporaneous instruction, there is

no indication in the appellate record that one was requested. See
 

United States v. Valencia-Lucena, 925 F.2d 506, 513-14 (1st Cir. 1991)
 

(review "limited to plain error" where defendant eschewed request for

limiting instruction upon trial court's denial of mistrial motion).

Rather, the court permitted the defense to draft a curative instruc-

tion which was included in the jury charge delivered a few hours

later. "We normally presume that a jury will follow an instruction to

disregard inadmissible evidence inadvertently presented to it, unless

there is an 'overwhelming probability' that the jury will be unable to

follow the court's instructions." Greer v. Miller, 483 U.S. 756, 766
 

n.8 (1987) (quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987)).
 

Whether or not the brief interval between the subject testimony and

the curative instruction was the product of a tactical choice on the

part of the defense, it did not amount to "plain error."

 Appellants contend that the government's failure to disclose

the informant's prior dealings with Garcia, in response to a discovery

 8

request from the defense for "all information which may be used for

impeachment of government witnesses," constituted a Brady violation.
 

Once again we assume, for purposes of discussion, that Garcia's

testimony relating to the informant's prior cocaine dealings was

potentially exculpatory, and we accept the government's concession

that it was material, in the sense that its disclosure would "create a

reasonable probability . . . that the result of the proceeding would

be different." United States v. Bagley, 473 U.S. 667, 682 (opinion of
 

Blackmun, J.) (1985); United States v. Osorio, 929 F.2d 753, 758 (1st
 

Cir. 1990). In order to warrant reversal, however, a delayed disclo-

sure of material evidence must be shown to have "prevented [the

defense] from using the disclosed material effectively in preparing

and presenting the defendant's case." United States v. Ingraldi, 793
 

F.2d 408, 411-12 (1st Cir. 1986); United States v. Devin, 918 F.2d
 

280, 289-90 (1st Cir. 1990); United States v. Osorio, 929 F.2d 753,
 

757 (1st Cir. 1991). In the present case, the defense was well aware

of the informant's prior cocaine dealings with Garcia prior to trial.

Indeed, Garcia was called as a witness by the defense, for the very
 

purpose of testifying to these matters.2 Accordingly, there was no

showing that prejudice resulted from the delayed disclosure. See
 

Valencia-Lucena, 925 F.2d at 514 ("[T]he fact that the government
 

 

 2During cross-examination, Garcia stated: "sometime back,
Eduardo went to my house . . . . and he told me about his problem.
And, well since I knew [the informant] from sometime ago and I knew
about his past, I decided that if it was necessary for me to come to
testify here in court, to give my testimony in front of the Court, I
would do so and here I am."

 9

failed to disclose to the defense before trial that [its informant]

was a drug user in no way robbed the defendant of a fair trial because

the issue was fully revealed at trial and extensively explored during

cross-examination").

 Finally, appellants challenge the sufficiency of the evi-

dence, claiming that they were "merely present" at the scene of Luis's

drug dealing activities, and reminding us that evidence of "mere

presence" is insufficient to support their convictions. See Ortiz,
 

966 F.2d at 707 (1st Cir. 1992); United States v. Francomano, 554 F.2d
 

483, 486 (1st Cir. 1977). We evaluate their claim under well-estab-

lished standards. Although "neither mere association with the princi-

pal nor mere presence at the scene of the crime . . . is sufficient to

establish aiding and abetting . . . .," United States v. Alvarez, 987
 

F.2d 77, 83 (1st Cir. 1993); United States v. Aponte-Suarez, 905 F.2d
 

483, 491 (1st Cir.), cert. denied, 498 U.S. 990 (1990) and cert.
 

denied, 498 U.S. 1092 (1991), a defendant's presence at the scene of a
 

criminal transaction is sufficient to support a conviction for "aiding

and abetting" if it is accompanied by additional indicia of participa-
 

tion in or association with the criminal venture. See id. (citing
 

United States v. Rodriguez Cortes, 949 F.2d 532, 539 (1st Cir. 1991));
 

see also United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993)
 

("culpability of a defendant's presence hinges upon whether the

circumstances fairly imply participatory involvement"). Here, in

addition to his presence at the repair shop, the government offered

evidence that Eduardo (1) consulted with Luis on April 6, as to the

 10

price and quantity of the cocaine offered to the informant; (2)

watched for, and warned Luis about, police presence in the area of the

repair shop on April 13; (3) accompanied Luis in a separate car to the

site of the aborted first transaction; (4) told the agents where to

park their car when they arrived to consummate the transaction; and

(5) evinced familiarity with (and some measure of responsibility for)

the cocaine transaction, just prior to the DEA raid, by telling Luis

how to handle the cocaine. In addition to Algarin's "mere presence"

at the repair shop, the government presented evidence that Algarin (1)

introduced the informant to Luis, after learning that the informant

sought to purchase a large quantity of cocaine; (2) stood next to Luis

during negotiations with the informant on April 6; (3) evinced famil-

iarity with Luis's business practices, and sought to offer reassurance

to the informant and undercover agent ("don't be afraid, they don't do

tricks here"), when the informant arrived to consummate the drug

deal; and, finally, (4) ran from the shop, scuffling with a DEA agent

at the gate, when the raid began. Cf. United States v. Hernandez, No.
 

91-2034/5/6, slip op. at 18 (1st Cir. May 12, 1993) (upholding convic-

tion where defendant apparently knew that an illegal drug transaction

was about to occur, lingered inexplicably at apparent vantage point

outside apartment, and attempted to flee during DEA raid); United
 

States v. Martinez, 479 F.2d 824, 829 (1st Cir. 1973) ("presence
 

itself implies participation [where] . . . a companion stands by

during a [crime], ready to sound a warning or give other aid if

required."). Finally, as to both defendants, we recognize that

 11

"criminals rarely welcome innocent persons as witnesses to serious

crimes," Hernandez, slip op. at 17 (quoting Ortiz, 966 F.2d at 712),
 

and that Luis's apparent willingness to consummate the transaction in

Eduardo's and Algarin's presence provides some corroboration of the

jury's ultimate conclusion as to their culpability. United States v.
 

Batista-Polanco, 927 F.2d 14, 18 (1st Cir. 1991). Arguably, then,
 

even if the evidence of appellants' participatory presence was some-

what thin, particularly in Algarin's case, it was nonetheless legally

sufficient to support their convictions.

 Affirmed.
 

 12